**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHERIF ELMANZALAWY,

               Plaintiff,

          - v -

TOO GOOD TO GO INC. and CHRISTINA
MALINAS,

               Defendants.

Civil Action No.: 1:26-cv-3589

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Sherif Elmanzalawy ("Elmanzalawy"), by and through his undersigned attorneys, brings this Complaint against Defendants Too Good to Go Inc. ("TGTG") and Christina Malinas ("Malinas"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, as well as legally protected absence retaliation for a wage complaint or legally protected absence under New York Labor Law ("NYLL") § 215.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

2. The Court has original jurisdiction over Elmanzalawy's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

3. The Court has supplemental jurisdiction over Elmanzalawy's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. All conditions precedent to filing the instant action have been fulfilled. On or about September 26, 2025, Elmanzalawy submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about March 27, 2026, the EEOC issued Elmanzalawy a Notice of Right to Sue, and this action is being brought within 90 days of Elmanzalawy's receipt of the Notice of Right to Sue.

6. Within 10 days of the commencement of this action, Elmanzalawy will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

**PARTIES**

7. Plaintiff Elmanzalawy is a resident of the State of New York and former Sales Team Leader of TGTG.

8. At all relevant times, Elmanzalawy was an "employee" of Defendants under all relevant statutes.

9. TGTG is a corporation registered in New York and permitted to do business in New York.

10. TGTG employed at least 15 employees throughout Elmanzalawy's employment.

11. TGTG conducted business at 32 Avenue of the Americas, New York, NY 10013, where it employed Elmanzalawy.

12. Defendant Malinas was at all relevant times employed by TGTG as its Expansion Manager.

13.     Malinas had the ability to affect the terms and conditions of Elmanzalawy's employment and did so by, among other things, assigning his work, overseeing his schedule and approving paid time off, evaluating his performance, and participating in the investigations and decisions that led to his termination.

14.     Upon information and belief, Malinas resides in Toronto, Canada.

15.     At all relevant times, Defendants were Elmanzalawy's "employer" under all relevant statutes.

**FACTUAL BACKGROUND**

**I.      Elmanzalawy is Hired by TGTG and Excels in his Role**

16.     In June 2024, Elmanzalawy began working as a Sales Specialist for Too Good To Go Inc. at its 32 Avenue of the Americas, New York, NY 10013 location.

17.     Elmanzalawy succeeded in his role and received positive feedback based on his performance. For example, he was lauded for being the third highest performing Sales Specialist in a department of over 250 people, and TGTG awarded him a Q3 performance bonus.

18.     While Elmanzalawy was employed by TGTG, he never received any criticism or negative feedback regarding his work performance.

19.     On July 1, 2025, due to his positive performance, Elmanzalawy was promoted to Sales Team Leader and received a raise.

20.     In or around early August 2025, following his promotion, Elmanzalawy began reporting to Christina Malinas.

**II.     Elmanzalawy Discloses his Disability and Need for Accommodations**

21.     Elmanzalawy sustained an injury as a child that resulted in a retinal detachment in his left eye, causing him to permanently lose vision in that eye.

22.    The retinal detachment impacted, among other things, Elmanzalawy's ability to see as well as functions of the nervous system.

23.    Because of this injury, Elmanzalawy wears a prosthetic eye and requires regular treatment to prevent infection.

24.    He also requires a reasonable accommodation in the form of extended periods of rest without wearing the prosthetic eye to prevent damage to the tissue in his left eye socket.

25.    When he joined the company, Elmanzalawy informed TGTG of his disability and his need for periodic time off to care for his eye as a reasonable accommodation.

### III.    TGTG and Malinas Fail to Accommodate Elmanzalawy

26.    On or about August 22, 2025, while Elmanzalawy was on approved time off for medical treatment, Malinas required him to attend a video call.

27.    To attend the call, Elmanzalawy was forced to abruptly stop his medically-necessary treatment—which required him to remove his prosthetic, close both eyes for three hours, to rest his eye and use medicated drops—and insert his prosthetic eye.

28.    Malinas's insistence that Elmanzalawy interrupt his recovery for a non-emergency video call constituted a direct interference with his known medical accommodations.

29.    That same day, Elmanzalawy emailed Adrienne Weber in TGTG's Human Resources department to complain about Malinas requiring him to attend a video call during his medical leave.

30.    The following day, Elmanzalawy informed Malinas that he was experiencing physical discomfort because he had been forced to interrupt his treatment for the work call.

31.    Over the weekend, Elmanzalawy emailed Human Resources again, requesting an independent investigator because Malinas was investigating a decision she had made, and

reiterated that being contacted during his approved PTO had negatively impacted his medical maintenance.

32.     On Monday, August 25, 2025, Elmanzalawy informed Malinas he was still experiencing pain when attempting to insert his prosthetic eye and had scheduled an emergency medical appointment. He reported to work that day without the prosthetic eye.

33.     At the emergency appointment, Elmanzalawy was diagnosed with punctate keratitis (small lesions on the cornea), bullous keratopathy, and corneal neovascularization 360 degrees.

34.     His provider documented that the condition was caused by being forced to wear the prosthetic eye when he was supposed to be allowing the eye to rest.

35.     Elmanzalawy submitted this medical documentation to TGTG.

## IV.     Elmazalawy Complains and TGTG Retaliates

36.     On August 26, 2025, Elmanzalawy met with Adrienne Weber in Human Resources to discuss his formal complaint regarding the interference with his accommodation.

37.     That evening at 6:14 PM, Weber notified Elmanzalawy in writing that the investigation had concluded, clearing him of the allegations of bullying, misappropriation of leads, and favoritism that Malinas had facilitated.

38.     The very next day, August 27, 2025, TGTG terminated Elmanzalawy's employment.

39.     Defendants terminated Elmanzalawy just three business days after he complained about disability discrimination, a mere 12 hours after he submitted medical documentation proving TGTG caused him physical eye damage, and only one business day after HR officially cleared him of the workplace allegations.

40.    As a direct result of Defendants' failure to accommodate him and their subsequent retaliatory termination, Elmanzalawy has suffered significant damages, including physical injury, lost wages, and emotional distress.

41.    TGTG's stated reason for termination—alleged "misuse of vouchers"—is false and pretextual.

42.    Using personal vouchers to save bags was a widely accepted, company-endorsed practice openly encouraged by employees on company Slack channels without facing any discipline.

43.    In fact, multiple instances of "misuse" TGTG cited to justify Elmanzalawy's termination predated Elmanzalawy's promotion, indicating that this practice was not only accepted at the time, but rewarded with a promotion.

44.    On the exact same day Elmanzalawy was terminated, TGTG issued only verbal warnings to at least seven other similarly situated employees who engaged in the identical voucher conduct. On information and belief, none of these employees were disabled.

45.    To manufacture a false motive for termination, TGTG fabricated Elmanzalawy's reporting structure to investigators, falsely claiming he managed his spouse and another employee to attribute the "misuse" to him.

46.    In reality, none of those individuals reported to him. Their actual managers were never disciplined.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the ADA)
### *Against Defendant TGTG*

47.    Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

48.     Defendant TGTG discriminated against Elmanzalawy on the basis of his disability and request for a reasonable accommodation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, Elmanzalawy has suffered disparate treatment as a result of TGTG's conduct.

49.     Elmanzalawy is a qualified individual with a disability under the ADA and was perceived by TGTG as being disabled, and he is therefore a member of a protected class.

50.     Elmanzalawy was qualified to work as a Sales Team Leader for TGTG and satisfactorily performed the duties required by that position.

51.     TGTG subjected Elmanzalawy to adverse employment actions because of his disability.

52.     As a direct and proximate result of TGTG's unlawful employment practices, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

53.     Defendant TGTG's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

## SECOND CAUSE OF ACTION
### (Failure to Accommodate in Violation of the ADA)
#### *Against Defendant TGTG*

54.     Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

55.     Elmanzalawy is a qualified individual with a disability under the ADA and was perceived by TGTG as being disabled, and is therefore a member of a protected class.

56.     TGTG was aware of Elmanzalawy's disability and its related limitations.

57. Elmanzalawy requested reasonable accommodations for his disability.

58. TGTG failed to provide a reasonable accommodation for Elmanzalawy's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Elmanzalawy's disability.

59. Had TGTG provided Elmanzalawy with a reasonable accommodation, Elmanzalawy could have performed the essential functions of his job.

60. Accordingly, TGTG discriminated against Elmanzalawy by virtue of failing to accommodate his known disability and failing to engage in an interactive process in violation of the ADA.

61. As a direct and proximate result of TGTG's unlawful employment practices, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

TGTG's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

### THIRD CAUSE OF ACTION
#### (Retaliation in Violation of the ADA)
#### *Against Defendant TGTG*

62. Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

63. As set forth in detail above, Elmanzalawy engaged in activity protected under the ADA.

64. TGTG was aware that Elmanzalawy opposed unlawful conduct and/or asserted his rights under the ADA.

65. TGTG, unlawfully and without cause, retaliated against Elmanzalawy as a direct

result of Elmanzalawy asserting his rights under the ADA as someone with disability or perceived disability, and Elmanzalawy suffered materially adverse employment actions as a result.

66. As a direct and proximate result of TGTG's unlawful employment practices, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

67. TGTG's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

68. Accordingly, TGTG retaliated against Elmanzalawy in violation of his statutory rights as guaranteed by the ADA.

**FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

69. Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

70. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Elmanzalawy because he was a member of a protected class.

71. Elmanzalawy is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

72. Elmanzalawy was qualified to work as a Sales Team Leader for Defendants, and he satisfactorily performed the duties required by the position he held with Defendants.

73. As set forth in detail above and here, Defendants discriminated against Elmanzalawy and subjected him to adverse employment actions.

74. As a direct and proximate result of the unlawful employment practices of

Defendants, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

75. Accordingly, Defendants discriminated against Elmanzalawy because of his disability, in violation of his statutory rights as guaranteed by the NYSHRL.

## FIFTH CAUSE OF ACTION
### (Failure to Accommodate in Violation of the NYSHRL)
### *Against All Defendants*

76. Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

77. Elmanzalawy is a qualified individual with a disability under the NYSHRL and was perceived by Defendants as being disabled, and he is therefore a member of a protected class.

78. Defendants were aware and on notice of Elmanzalawy's disability and its symptoms.

79. Elmanzalawy requested reasonable accommodations for his disability.

80. TGTG failed to provide a reasonable accommodation for Elmanzalawy's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Elmanzalawy's disability.

81. Had Defendants provided Elmanzalawy with a reasonable accommodation, Elmanzalawy could have performed the essential functions of his job.

82. Accordingly, Defendants discriminated against Elmanzalawy by virtue of failing to accommodate his known disability and failing to engage in an interactive process in violation of the NYSHRL.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

83.     Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

84.     As set forth in detail above, Elmanzalawy engaged in activity protected under the NYSHRL.

85.     Defendants retaliated by subjecting Elmanzalawy to discrimination and adverse employment actions because of his protected activity in violation of Elmanzalawy's statutory rights.

86.     Defendants were aware that Elmanzalawy opposed unlawful conduct and asserted his rights under the NYSHRL.

87.     Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

88.     Accordingly, Defendants retaliated against Elmanzalawy in violation of his statutory rights as guaranteed by the NYSHRL.

## SEVENTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

89.     Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

90.     The aforementioned facts and circumstances demonstrate that Defendants discriminated against Elmanzalawy because he was a member of a protected class.

91.     Elmanzalawy is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

92.    Elmanzalawy was qualified to work as a Sales Team Leader for Defendants, and he satisfactorily performed the duties required by the position he held with Defendants.

93.    As set forth in detail above and here, Defendants discriminated against Elmanzalawy in the terms and conditions of his employment by treating Elmanzalawy less well than his similarly situated, non-disabled coworkers.

94.    The discriminatory conduct directed at Elmanzalawy was motivated, in whole or in part, by Elmanzalawy disability.

95.    As a direct and proximate result of the unlawful employment practices of Defendants, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

96.    The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

97.    Accordingly, Defendants discriminated against Elmanzalawy because of his disability, in violation of his statutory rights as guaranteed by the NYCHRL.

### EIGHTH CAUSE OF ACTION
### (Failure to Accommodate in Violation of the NYCHRL)
### *Against All Defendants*

98.    Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

99.    Elmanzalawy is a qualified individual with a disability under the NYCHRL and was perceived by Defendants as being disabled, and he is therefore a member of a protected class.

100.    Defendants were aware and on notice of Elmanzalawy's disability and its

symptoms.

101.    Elmanzalawy requested reasonable accommodations for his disability.

102.    TGTG failed to provide a reasonable accommodation for Elmanzalawy's disability and refused to participate in a good faith interactive process to determine if there was an accommodation that would accommodate Elmanzalawy's disability.

103.    Had Defendants provided Elmanzalawy with a reasonable accommodation, Elmanzalawy could have performed the essential functions of his job.

104.    As a direct and proximate result of Defendants' unlawful employment practices, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

105.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

106.    Accordingly, Defendants discriminated against Elmanzalawy by failing to accommodate his known disability under NYCHRL.

**NINTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

107.    Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

108.    As set forth in detail above, Elmanzalawy engaged in activity protected under the NYCHRL.

109.    Defendants retaliated against Elmanzalawy by treating him less well than similarly situated employees and subjecting him to discrimination and adverse employment

actions because of his protected activity in violation of the NYCHRL.

110.    Defendants were aware that Elmanzalawy opposed unlawful conduct and/or asserted his rights under the NYCHRL.

111.    As a result of this protected activity, Defendants retaliated against Elmanzalawy by engaging in conduct that was reasonably likely to deter an individual from engaging in such protected activity, in violation of the NYCHRL.

112.    As a direct and proximate result of Defendants' unlawful employment practices, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

113.    The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

114.    Accordingly, Defendants retaliated against Elmanzalawy in violation of his statutory rights as guaranteed by the NYCHRL.

## TENTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of the NYSHRL and NYCHRL)**
*Against Defendant Malinas*

115.    Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

116.    Defendant Malinas aided, abetted, incited, compelled, or coerced TGTG's unlawful conduct, including discrimination, failure to provide a reasonable accommodation, and retaliation, against Elmanzalawy by actually participating in the conduct giving rise to the claims herein.

117.    Malinas was aware of their role in the unlawful activity and knowingly assisted

TGTG in its violations of the NYSHRL and NYCHRL.

118.    As a direct and proximate result of Malinas's conduct, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

119.    Malinas's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

## ELEVENTH CAUSE OF ACTION
**(Retaliation for Legally Protected Absence in violation of NYLL)**
*Against All Defendants*

120.    Elmanzalawy repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

121.    Elmanzalawy engaged in protected activity under NYLL § 215, including, but not limited to, taking medical leave to tend to his disability.

122.    Defendants' termination of Elmanzalawy's employment in response to that protected activity constituted prohibited retaliation under NYLL § 215(1)(a).

123.    As a direct and proximate result of Defendants' conduct, Elmanzalawy has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

124.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Elmanzalawy, entitling him to punitive damages.

## **RELIEF**

Plaintiff Sherif Elmanzalawy demands judgment in his favor and against Defendants Too Good to Go Inc. and Christina Malinas as follows:

A.  An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Elmanzalawy for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B.  An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Elmanzalawy for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

C.  An award of punitive damages, in an amount to be determined at trial;

D.  Prejudgment interest on all amounts due;

E.  An award of Elmanzalawy's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.  Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Sherif Elmanzalawy demands a trial by jury on all issues so triable of right.

Dated: April 30, 2026
      New York, New York

**RISSMILLER PLLC**

By:    */s/ Jazly Liriano*
       Jazly Liriano
       5 Pennsylvania Plaza, 19th Floor
       New York, NY 10001
       T: (646) 664-1412
       jliriano@rissmiller.com

       *Attorneys for Plaintiff Sherif Elmanzalawy*